**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNEKE DELAAT, ERIK DELAAT, and ANDREA L. DELAAT,<br><br>    Plaintiffs,<br><br>  v.<br><br>KULBAR DHILLON, RAJINDER DHILLON, and DOES 1-20, inclusive,<br><br>    Defendants.<br>_____/ | No. C 13-04605 JSW<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR REMAND AND GRANTING DEFENDANTS' REQUEST TO REFER MATTER TO UNITED STATES BANKRUPTCY COURT** |

Now before the Court is a motion for remand of action to state court filed by Anneke Delaat ("Anneke"), Erik Delaat ("Erik") and Andrea L. Delaat's ("Andrea") (collectively "Plaintiffs"). Having carefully reviewed the parties' papers, the relevant legal authority, and the record in this case, the Court hereby DENIES Plaintiffs' motion to remand the action to state court and GRANTS Kulbar and Rajinder Dhillon's ("Defendants") request to refer the matter to the United States Bankruptcy Court of the Northern District of California, Santa Rosa Division.

**BACKGROUND**

Plaintiffs filed this action alleging two causes of action: (1) declaratory relief and (2) specific performance. Plaintiffs' claims are based on Defendants' confirmed Plan of Reorganization in a Chapter 11 proceeding ("Plan") with regard to a single family residence located at 1877 Salvador Avenue, Napa, California ("Property"). According to the allegations in Plaintiffs' complaint ("Complaint"), which must be taken as true at this procedural posture,

1  Defendants purchased the Property together with Plaintiffs. (Compl. ¶ 5.) Defendants acquired
2  fifty percent of the Property. (*Id.*) Anneke and her now deceased husband, Evert Delaat
3  ("Evert"), acquired forty-five percent of the Property. Erik and Andrea agreed to occupy the
4  residence, make the mortgage payments and necessary repairs to the property in exchange for
5  the remaining five percent interest in the Property. (*Id.*) All the owners paid the property taxes
6  and assessment fees. (*Id.*) On December 14, 2001, Defendants borrowed $235,000 against the
7  Property. (*Id.* at ¶ 7.) "In 2003, Evert processed a lot line adjustment . . . which resulted in the
8  creation of two legal parcels on the Property which share a common street address and utility
9  connections." (*Id.* at ¶ 8.) On September 17, 2007, Plaintiffs and Defendants executed a
10 modified deed of trust in order to reflect the lot line adjustment with the new description of the
11 Property into two tracts. (*See* Ex. B of Defendants' Notice of Removal.) Defendants and
12 Plaintiffs remained the owners of the Property. (*Id.*)

On January 11, 2011, Defendants filed for Bankruptcy "under Chapter 11 of the
Bankruptcy Code in the Northern District of California, Santa Rosa Division." (*Id.* at ¶ 10.)
The Property was subject to the bankruptcy proceeding as one of Defendants' assets. (*Id.*) On
November 7, 2011, Defendants' Plan "was confirmed by order of the Bankruptcy Court." (*Id.*
at ¶ 11.) "The Plan refers to the Property as Salvador Avenue, which is defined to mean 1877
Salvador Avenue, Napa." (*Id.*; *see also* Ex. B of Defendants' Request for Judicial Notice ("Ex.
B") at Sec I.)[1] The Plan specifies that, in relationship to Salvador Avenue, Defendants "will not
be making any further payments" but instead Anneke would pay:

(1) The delinquent property taxes and any interest.
(2) The remaining mortgage to Wells Fargo Bank and no modification to the security agreement is allowed.
(3) $50,000 to the California State Board of Equalization ("BOE") "from the sale of the Salvador Avenue" to Anneke.

(Ex. B at Sec. V.)

---

[1] The Court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute" such as court records. Fed. R. Evid. 201(b); *see also* Cal. Evid. Code § 452. Here, Defendants filed a request for judicial notice of the "Order Confirming Chapter 11 Plan" filed in the bankruptcy court. (Ex. B.) Both parties have admitted to the existence of the Plan and have not questioned its authenticity. Therefore, the Court takes judicial notice of the Plan. *See* Fed. R. Evid. 201(b).

The Plan is to be funded by income derived from the sale of real property. (Ex. B at Sec. VI.) Specifically in relationship to the Property, Defendants may retain a real estate broker to market and determine the list price of Salvador Avenue with the purpose of maximizing the payment to BOE. (*Id.*) Plaintiffs allege they have made the mortgage payments to Wells Fargo, continue to offer to pay BOE and property taxes to Napa county, but Defendants have refused to convey both parcels of the Property in accordance with the Plan. (Compl. ¶ 22-23.)

Plaintiffs filed their Complaint on August 29, 2013 in the Napa Superior Court. On October 4, 2013, Defendants removed the action to this Court on the basis that Plaintiffs' claims raise a federal question. On November 4, 2013, Plaintiffs moved to remand the action to state court and filed an amended motion on November 8, 2013.

## ANALYSIS

**A.   Legal Standards Relevant to Removal Jurisdiction.**

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Federal courts are courts of limited jurisdiction, therefore "the presumption against removal means that 'the defendant always has the burden of establishing that removal is proper.'" *Id.* (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). If at any time doubts arise with regard to the right of removal, the district court must resolve in favor of remanding the case. *Gaus*, 980 F.2d at 566. In order to determine whether the removing party has met its burden, a court may consider the contents of the removal petition and "summary-judgment-type evidence." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). Furthermore, "all cases under title 11 and all civil proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges of this district." 28 U.S.C. § 157(a).

The district court has subject matter jurisdiction in civil proceedings based on diversity or a federal question and the bankruptcy court has jurisdiction in matters arising under Title 11. 28 U.S.C. §§ 1331, 1332(a); 1334(b). Remand may be ordered, to the appropriate jurisdiction, at any time before final judgment for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c).

3

It is well established that a court must evaluate whether it has jurisdiction based on the circumstances that exist at the time the notice of removal is filed. *See, e.g.*, *Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998). "In a facial [jurisdictional] attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**B.    Subject Matter Jurisdiction.**

**1.    State Court Jurisdiction.**

Plaintiffs move to remand this matter to state court on the basis that their claim is based on contract law and not on a federal question. "It is well established that a chapter 11 plan is a contract between the debtor and its creditors that is subject to the general rules governing the interpretation of contracts under the law of the state in which the plan was confirmed," unless the action depends on bankruptcy laws. *In re Miller*, 253 B.R. 455, 458 (Bankr. N.D. Cal. 2000); *see also Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993) ("A reorganization plan resembles a consent decree and therefore, should be construed basically as a contract"). "Whether a contract is ambiguous is a question of law." *In re Miller*, 253 B.R. at 458. The Ninth Circuit has concluded that a bankruptcy court does not have jurisdiction "to make final determinations in matters that could have been brought in a district court or a state court." *In re Thomas*, 765 F.2d 926, 929 (9th Cir. 1985).

In this matter, the Plan confirmed on November 7, 2011, constitutes a contract between Defendants and various creditors, including Plaintiffs. Plaintiffs claim that Defendants failed to convey the Property to them under the terms of the Plan and therefore have failed to perform under the contract. (Compl. ¶ 23.) Furthermore, Plaintiffs request declaratory relief in order to clarify the description of the Property under the Plan. (*Id*. at ¶ 17.) On the face of the Complaint, Plaintiffs' claims raise contractual issues governed by California law. The mere fact that the current controversy involves a Title 11 plan does not give this Court subject matter jurisdiction and Defendants have not met their burden of proving that removal is proper. Instead, Defendants have requested a referral to the United States Bankruptcy Court under

4

1  Section 157(a), on the basis that this matter arises under Title 11 jurisdiction. Therefore, the
2  Court concludes that removal was improper and now must determine whether the bankruptcy
3  court has jurisdiction over this matter.

### 2. Bankruptcy Court Jurisdiction.

#### I. Core Proceeding.

Defendants contend that the bankruptcy court has exclusive jurisdiction over this matter as a core proceeding, because Plaintiffs seek interpretation and enforcement of the Plan. Civil proceedings that are under or arise under Title 11 are considered "'core proceedings,' in which the bankruptcy court may enter appropriate orders and judgments, or 'non-core proceedings,' which the bankruptcy court may hear but for which it may only submit proposed findings of fact and conclusions of law to the district court for de novo review." 28 U.S.C. § 157; *see also Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). Here, Defendants fail to enumerate which core proceeding Plaintiffs' claims may fall under in Section 157(b)(2), therefore the Court shall address Plaintiffs' claims under the catch-all provisions of the same Section.

#### ii. Non-Core Proceeding.

Plaintiffs contend that both of their causes of action for declaratory relief and specific performance, should be resolved in state court because the claims relate to state property and contract laws. "Actions that do not depend on bankruptcy laws for their existence and [ ] could proceed in another court are considered 'non-core.'" *Sec. Farms*, 124 F.3d at 1008. "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b). The Ninth Circuit has held that state law contract claims arguably falling within the two catch-all provisions under Section 157(b) are "'non-core' 'related proceedings' under Section 157(c)." *Piombino Corp. v. Castlerock Properties* (*In re Castlerock Properties*), 781 F.2d 159, 162 (9th Cir. 1986). The two relevant catch-all provisions under Section 157(b) are: (1) "matters concerning the administration of the estate" and (2) "proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. §§ 157(b)(2)(A), (O).

Plaintiffs' first cause of action involves the interpretation of a contractual term and may fall under either catch-all provision. The first catch-all provision applies to matters concerning the administration of the bankrupt entity's estate. *See* 28 U.S.C. §§ 157(b)(2)(A). In this case it is imperative to determine the nature of the Property to be conveyed in order to release Defendants from their debtor obligation under the Plan. (Ex. B at Sec. V.) Plaintiffs seek a declaratory judgement determining whether, under the Plan, the Property includes both the improved and unimproved parcels. (Compl. ¶ 17.) Plaintiffs contend that Defendants are required to convey both parcels of the Property because they were jointly acquired and are commonly referred to as 1877 Salvador Avenue, Napa. (*Id.* at ¶¶ 8, 16.) Conversely, Defendants contend that they are only required to convey one parcel, because the debt subject to the bankruptcy proceeding only involved the improved parcel. (*Id.* at ¶¶ 7, 16.) A court ruling on the nature of the Property to be conveyed, will affect the eventual disposition of the Property and the administration of Defendants' estate. Therefore, this claim falls within the first catch-all provision relating to matters concerning administration of the estate.

Plaintiffs' first cause of action also falls under the second catch-all provision, because this matter involves the liquidation of an asset. *See* 28 U.S.C. §§ 157(b)(2)(O). The Plan is to be funded by income derived from the sale of real property. (Ex. B at Sec. VI.) In order for Defendants to give Plaintiffs full title to the Property, the Plan allows Defendants to hire real estate professionals to determine the market value of the Property in order to maximize payments to BOE. (*Id.* at Sec. VI.) Because the Plan contains a provision that relates to the liquidation of the Property, it falls within the second catch-all provision. Because Plaintiffs' first cause of action is a contractual claim and falls within either of the catch-all provisions, it would necessarily result in a non-core proceeding in bankruptcy court under the Ninth Circuit standard.

Plaintiffs' second cause of action for specific performance falls within the first catch-all provision of "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). The Plan provides that a payment of $50,000 is to be made to BOE "from the sale of the Salvador Avenue" to Anneke. (Ex. B at Sec. V.) Accordingly, Defendants are required to

6

1 convey the Property to Anneke once she meets the terms of the Plan. Plaintiffs claim that
2 although they have met the terms of the Plan, Defendants have not released title to the Property.
3 Accordingly, this is a matter that concerns the administration of Defendants' estate and, as a
4 contractual claim, it would result in a non-core related proceeding. Consequently, the Court
5 finds that both of Plaintiffs' causes of action advance contractual claims that fall within the
6 catch-all provisions. As a result, Plaintiffs' claims would be subject to non-core proceedings in
7 bankruptcy court, unless bankruptcy court has jurisdiction over the claims as a "related
8 proceeding."

### iii. Related Proceeding.

The bankruptcy court has original jurisdiction over proceedings "related to cases under title 11." 28 U.S.C. § 1334(b). "'An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon handling and administration of the bankrupt estate.'" *In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1155 (9th Cir. 1991) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled by Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012)). In *Nuveen Mun. Trust,* the court clarified the applicable "conceivability standard" in order to determine if the outcome of a civil proceeding would have an effect on the administration of the bankrupt entity's estate. 692 F.3d at 294. "Conceivability is determined at the time a lawsuit is filed." *In re Town & Country Home Nursing*, 963 F.2d at 1155.

Specifically in the post-confirmation context, courts "apply varying standards that focus on whether the action could conceivably affect the implementation of the confirmed plan." *Nuveen Mun. Trust*, 692 F.3d at 295. In this context, bankruptcy jurisdiction only applies where there is sufficient 'close nexus' between the confirmed plan and the civil proceeding. *Pegasus Gold Corp. v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005). "[M]atters affecting 'the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.'" *Id.* (quoting *Resorts Int'l Inc., v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154,

7

166-67 (3d Cir. 2004)). "[T]here is little need for a nationally uniform body of law regarding the interpretation of Chapter 11 plans and because state law is regularly incorporated into bankruptcy law, state law constitutes the federal rule of decision here and governs our interpretation of [the] plan." *Hillis Motors, Inc.*, 997 F.2d at 588.

Here, Defendants' rights and obligations will be impacted by a court decision made pursuant to Plaintiffs' claims, thereby impacting the administration of their estate. Plaintiffs' actions raise an issue of interpretation for the Court to determine whether Defendants will gain or lose property rights and respective obligations to the unimproved parcel of the Property. Therefore, Defendants argue that because their property rights and estate administration will be impacted by the result of this action, the action is related to the bankruptcy. Additionally, Defendants point out that the Plan specifically reserves jurisdiction in the "[r]esolution of controversies or disputes regarding the interpretation of any provision of the Plan [and t]he implementation of the provisions of the Plan." (Ex. B at Sec. X.) As a result, the principles of judicial efficiency establish that this matter meets the requisite nexus between the Plan and civil action. Plaintiffs' claims are related matters to the prior bankruptcy proceeding and bankruptcy court can incorporate state contract law in the related proceeding. Consequently, the Court finds that the bankruptcy court has jurisdiction to adjudicate this matter because the confirmed plan falls within the narrower scope of "related to" bankruptcy jurisdiction.

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion to remand is DENIED and this action is REFERRED to the United States Bankruptcy Court, Santa Rosa Division.

**IT IS SO ORDERED.**

Dated: March 13, 2014

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE